Case 8:24-cv-02577-JRK   Document 22   Filed 03/27/26   Page 1 of 13 PageID 1221

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

GINA SHUFELT,

        Plaintiff,

v.                                                      Case No. 8:24-cv-2577-JRK

FRANK BISIGNANO,
Commissioner of Social Security,[1]

        Defendant.

_____/

## <u>**OPINION AND ORDER**</u>[2]

## **I. Status**

Gina Shufelt ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of Buerger disease, [3]

---

[1]    Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. <u>See</u> Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

[3]    "Buerger disease is a rare disease of the arteries and veins in the arms and legs. In Buerger disease — also called thromboangiitis obliterans — blood vessels become blocked.

(Continued…)

hypertension, hypothyroidism, anxiety with panic attacks, dizziness, depression, pre-diabetes, and generalized pain. Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative transcript"), filed January 3, 2025, at 159-60, 169-70, 183, 201, 700.

On October 17, 2019, Plaintiff protectively filed applications for DIB and SSI, alleging a disability onset date of August 11, 2019. Tr. at 608-09 (DIB).[4] The applications were denied initially, Tr. at 159-68, 179, 181, 223-26 (DIB); Tr. at 169-78, 180, 182, 227-29 (SSI), and upon reconsideration, Tr. at 183-200, 219, 221, 232-37 (DIB); Tr. at 201-18, 220, 222, 238-43 (SSI).

On April 13, 2021, an Administrative Law Judge ("ALJ) held a hearing, during which Plaintiff (representing herself) testified. Tr. at 147-58. The hearing was continued so that Plaintiff's representative could make a proper appearance. Tr. at 149-58. On August 24, 2021, the ALJ held a supplemental hearing, during which she heard from Plaintiff, who appeared with a non-lawyer representative (actually a friend/social worker who was attempting to act as a representative). Tr. at 129-46. The hearing was continued so that

---

This reduces blood flow to the affected areas. Blood clots may form in the blood vessels." Mayo Clinic, Buerger disease, https://www.mayoclinic.org/diseases-conditions/buergers-disease/symptoms-causes/syc-20350658 (last visited Mar. 26, 2026).

[4] The SSI application was not located in the administrative transcript, although a summary states Plaintiff had an appointment to complete it on November 13, 2019. Tr. at 602. The DIB application was actually completed on October 21, 2019. See Tr. at 608. The protective filing date for both the applications is listed elsewhere in the administrative transcript as October 17, 2019. Tr. at 159, 183 (DIB), 169, 201 (SSI).

Plaintiff could attempt to find a lawyer to represent her. Tr. at 143-44. On November 2, 2022, the ALJ held a second supplemental hearing, during which she heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 80-109. On October 16, 2023, the ALJ held a third supplemental hearing, during which she heard from Plaintiff, who was represented by counsel, and a VE. Tr. at 110-28. Then, on April 10, 2024, the ALJ held a fourth supplemental hearing, during which she heard from Plaintiff, who was represented by counsel; a VE; and a medical expert ("ME").[5] Tr. at 54-79. On April 25, 2024, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 22-43.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council and submitted a brief authored by her lawyer. Tr. at 4-5 (Appeals Council exhibit list and order), 600-01 (request for review), 889-94 (brief). On October 3, 2024, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On November 4, 2024, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), through counsel, seeking judicial review of the Commissioner's final decision.

---

[5]    All hearings were held via telephone or video conference, with Plaintiff's consent. Tr. at 56, 82, 113, 131-32, 290 465, 488, 528.

Plaintiff on appeal argues the ALJ erred by "failing to make findings regarding the frequency and duration of her panic attacks and whether these episodes would result in excessive off task behavior or absences" and in "fail[ing] to articulate explicit and adequate reasons for rejecting [Plaintiff's] subjective testimony regarding her panic attacks." Plaintiff's Brief (Doc. No. 17; "Pl.'s Br."), filed March 12, 2025, at 2; see id. at 12-23. On April 11, 2025, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing Plaintiff's arguments. Then, on April 25, 2025, Plaintiff's Reply Brief (Doc. No. 20; "Reply") was filed. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.  The ALJ's Decision

When determining whether an individual is disabled, [6] an ALJ must follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment

---

[6]  "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 25-42. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since August 11, 2019, the alleged onset date." Tr. at 25 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: Buerger's disease (thromboangiitis obliterans); hypertension; obesity; depressive disorder; anxiety disorder; panic disorder with agoraphobia." Tr. at 25 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 26 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) with the following limitations: [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand or walk six (6) hours out of an eight-hour workday; and sit six (6) hours out of an eight-hour workday. [Plaintiff] can never climb ladders, ropes, or scaffolds. [Plaintiff] can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [Plaintiff] can frequently handle, finger, and feel with the bilateral upper extremities. [Plaintiff] should avoid all exposure to extreme cold and avoid even moderate exposure to unprotected heights, hazardous machinery, humidity and wetness, extreme heat, and vibration. [Plaintiff] can only frequently operate a motor vehicle. [Plaintiff] is able to understand, carry out, and remember simple, routine, and repetitive tasks; involving only simple work-related decisions. [Plaintiff] can adapt to gradual routine workplace changes. [Plaintiff] can maintain concentration, persistence, and pace at an acceptable level throughout a normal workday and week. [Plaintiff] can occasionally interact with the general public, co-workers, and supervisors.

Tr. at 29.

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff "is unable to perform any past relevant work" as a "licensed practical nurse (LPN)." Tr. at 41 (citation omitted). The ALJ then proceeded to the fifth and final step of the sequential inquiry. Tr. at 41-42. After considering Plaintiff's age ("39 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 41 (some emphasis and citation omitted), such as "bagger," "marker," and "routing clerk II," Tr. at 42. The ALJ concluded Plaintiff "has not been under a

6

disability . . . from August 11, 2019, through the date of th[e D]ecision." Tr. at 42 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against

7

the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

Plaintiff argues the ALJ erred in evaluating her subjective complaints, particularly about her panic attacks and their frequency. Pl.'s Br. at 12-23; Reply at 1-4. Moreover, Plaintiff contends the ALJ "failed to articulate explicit and adequate reasons for rejecting [Plaintiff's] subjective testimony about her panic attacks." Pl.'s Br. at 12 (emphasis omitted). Responding, Defendant argues that substantial evidence supports the ALJ's findings regarding Plaintiff's mental impairments, including Plaintiff's subjective complaints. Def.'s Mem. at 6-15.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)); see also Malak v. Comm'r of Soc. Sec., 131 F.4th 1280, 1287 (11th Cir. 2025). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

The Regulations provide that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); see Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." Raper, 89 F.4th at 1277 (citation omitted); see 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Malak, 131 F.4th at 1287; Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). Moreover, "the episodic nature of" certain mental disorders must be considered by an ALJ. Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019); see also, e.g., Simon

9

v. Commissioner, Social Security Administration, 7 F.4th 1094, 1106 (11th Cir. 2021).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink, 935 F.3d at 1268); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

"[B]efore denying an application based on a claimant's failure to comply with prescribed medical care, the ALJ must consider whether the claimant is able to afford the medical care." Brown v. Comm'r of Soc. Sec., 425 F. App'x 813, 817 (11th Cir. 2011) (citing Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003)). A claimant's inability to afford medical care excuses his or her lack of such care. Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (stating that

10

the court "agree[s] with every circuit that has considered the issue that poverty excuses noncompliance [with prescribed medical treatment]") (citations omitted). "Nevertheless, if the claimant's failure to follow medical treatment is not one of the principal factors in the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error." Id. (citing Ellison, 355 F.3d at 1275).

Here, to be sure, Plaintiff does rather consistently allege her panic attacks and fear of going out in public render her essentially homebound. But, the ALJ clearly took into account Plaintiff's subjective complaints about how she is affected by her mental impairments, including the panic attacks and inability to leave her house. The ALJ referred to such complaints multiple times in the Decision. See Tr. at 28, 30, 31, 34, 35. Ultimately, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 31.

Regarding Plaintiff's mental impairments specifically, the ALJ found:

> During the pendency of her claim, [Plaintiff] has emphasized the increasing severity of her mental health symptoms but the objective medical evidence of record supports no more than moderate limitations. At the most recent psychological evaluation, [Plaintiff] appeared somewhat unkempt with a tense, anxious, and depressed mood, and she was tearful. However, her

11

> thought processes were normal, she was not inattentive or distractable, and her memory was intact. She was able to understand commands and follow directions. An earlier psychological evaluation in 2020 noted similar findings. [Plaintiff] did not request medication to manage her anxiety until June 2020. While she testified that she is not currently receiving mental health treatment due to her insurance and financial concerns, she acknowledged that her symptoms were improved when getting treatment.

Tr. at 36 (citations omitted). Importantly, the ALJ also discussed and found "persuasive" the opinions of the consultative examiner, Peter Bursten, Ph.D., about what Plaintiff can do despite her mental limitations, including the panic disorder and agoraphobia. Tr. at 39; see Tr. at 990-91, 1015-20 (Dr. Bursten's opinions). Having appropriately evaluated the lack of consistency of Plaintiff's subjective complaints with the rest of the evidence, the ALJ was not obligated to make specific findings about the frequency and duration of Plaintiff's panic attacks. In the end, the ALJ limited Plaintiff from a mental perspective to "simple, routine, and repetitive tasks involving only simple work-related decisions, and she can adapt to gradual workplace changes"; regarding "her specific anxiety related to social interaction, she can occasionally interact with the general public, co-workers, and supervisors." Tr. at 40. The ALJ's findings reflect adequate consideration of the required factors and are supported by substantial evidence. Under the deferential standard of review, this Court cannot disturb these findings.

12

## V. Conclusion

The ALJ's Decision is supported by substantial evidence. In light of the foregoing, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2.      The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 27, 2026.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record